**VALERO TRANSMISSION COMPANY and Valero Transmission, L.P., Appellants,**

v.

**WAGNER & BROWN, II, A Partnership, Appellee.**

No. 08–89–00295–CV.

Court of Appeals of Texas, El Paso.

April 11, 1990.

Rehearing Overruled May 9, 1990.

Roger Townsend, Fulbright & Jaworski, Houston, for appellants.

Kleber C. Miller, Anne Gardner, Shannon, Gracey, Ratliff & Miller, Fort Worth, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from the granting of a summary judgment on the issue of liability and a trial to the court on the issue of damages in a suit for damages under a take-or-pay clause in a gas contract. We affirm.

These same parties were before this Court in an earlier appeal which raised the question as to the liability of each of two purchasers of gas under a contract which provided for the sale of ninety percent of the producer's delivery capacity. This Court held that the purchaser's contractual obligations were met in any year that the combined purchases of the two buyers equalled ninety percent of delivery capacity, even though one purchaser might buy less than forty-five percent of delivery capacity. *Wagner & Brown II v. Valero Transmission Company,* 737 S.W.2d 63 (Tex. App.—El Paso 1987, writ denied). In that first suit, Wagner & Brown recovered judgment against Valero for $5,743,764.00 as damages for deferral of production of oil and gas. In another suit between these parties involving a claim for curtailment in the purchase of certain categories of natural gas this Court held the claim was subject to arbitration under the terms of their contract. *Valero Energy Corporation v. Wagner & Brown, II,* 777 S.W.2d 564 (Tex. App.—El Paso 1989, writ pending).

The first suit was filed in March 1985 and tried in September 1986. In that case, Wagner & Brown recovered damages on a claim for deferral of production of both oil and casinghead gas for a period from January 1, 1985 through June 30, 1986. While the appeal was pending in that case, this suit was filed in February 1987 seeking to recover damages for a 1986 breach of contract based upon the "take-or-pay" clause which required the two purchasers, Valero Transmission Company and Texas Utilities Fuel Company to buy ninety percent of

delivery capacity of Wagner & Brown II. For the calendar year 1986, Wagner & Brown II acknowledged that TUFCO purchased 53.045 percent of their delivery capacity. Their proof in the trial court was that Valero purchased only 19.402 percent of delivery capacity, leaving them liable for the value of an additional 17.553 percent of delivery capacity. Their evidence established their damages for the breach at $13,-875,401.00. The trial court filed extensive findings of fact and conclusions of law with regard to that part of the case tried to the court on the damage issue after awarding damages based upon the evidence of Wagner & Brown II, plus pre-judgment interest and attorney fees.

■ Valero contends in its first point of error that the trial court erred in denying its motion for summary judgment and in granting Wagner & Brown's motion for partial summary judgment and in overruling a motion to modify, correct or reform the judgment. Its basic contentions are that the acceptance by Wagner & Brown of payment of the first judgment constituted an election of remedies for damages based on Valero's failure to take its share of gas in the first six months of 1986. It also asserts Wagner & Brown is barred by the doctrines of res judicata and collateral estoppel.

In the leading case of *Bocanegra v. Aetna Life Insurance Company*, 605 S.W.2d 848 (Tex.1980), the Court said the election doctrine may constitute a bar to relief when (1) one successfully exercises an informed choice (2) between two or more remedies, rights, or states of facts (3) which are so inconsistent as to constitute manifest injustice. We conclude that these two suits did not involve inconsistent remedies and rights. The first suit was filed in part as a tort claim based upon an alleged breach of Railroad Commission regulations concerning the priority for the purchase of casinghead gas from oil wells. The second suit was based upon an alleged breach of the contract provisions which required the two purchasers together to take-or-pay for ninety percent of gas delivery capacity. The rights which served as a basis for the

first suit arose from the administrative rules of the Railroad Commission which required purchasers of oil and gas to give casinghead gas, a by-product of oil production, a priority over other supplies of gas. Railroad Commission of Texas, Oil and Gas Division, Rule 34, 16 Tex.Admin.Code sec. 3.34 (formerly sec. 3.91, 11 Tex.Register 3688 and 3691, August 19, 1986). The rights which served as a basis for the second suit arose from the contract Wagner & Brown entered into with Valero. The damages awarded in the first suit were for all of 1985 and the first half of 1986. The damages awarded in the second suit were for all of 1986. The first suit involved both oil and gas. The second suit involved only gas. Although Valero claims the second suit resulted in a double recovery because of the overlap of time periods in both suits, each of which covered the first six months of 1986, it was not able to segregate what part of the damages awarded in the first judgment were attributable to that particular time period as to claim a credit or offset.

Valero relies upon the decision in *Kodiak 1981 Drilling Partnership v. Delhi Gas Pipeline Corporation*, 736 S.W.2d 715 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.), to support its argument that the two judgments in favor of Wagner & Brown have resulted in a double recovery. Clearly, that case was decided upon the application of a "force majeure" clause in the gas purchase contract and the failure of the seller to agree for the purchaser to take gas on a ratable basis. The appellate court concluded that there was no breach of the gas purchase agreement and that the failure of the purchaser to perform was solely due to the "force majeure" condition. The holding under those facts cannot control the disposition of this case in which there was no dispute that Valero had breached its contract and "force majeure" was not a basis for failure to perform.

However, in other contexts, courts have allowed alternative suits for damages resulting from both statutory violations and breach of contract. *See Cunningham v. Healthco, Inc.*, 824 F.2d 1448 at 1464 (5th Cir.1987) which relies upon Texas cases.

We conclude that the award in the first suit arising out of a violation of a statutory duty with regard to the purchase of gas and the award in the second suit arising out of a breach of contract do not result in a double recovery. In reaching this result, we are aware that in the first suit, Wagner & Brown presented alternative claims as to the amount of their damages and the basis upon which they were calculated. But, the trial court did not submit to the jury the alternative which included damages arising from wrongful curtailment of gas, and the judgment in the first case was not based upon that theory of recovery and the payment made and accepted by Wagner & Brown was not for that claim which the jury never considered; thus, it could not be an accord and satisfaction of that claim. We also recognize that in this case, Mr. Holmquest, the witness for Wagner & Brown who made the calculations as to their take-or-pay damages, acknowledged that both suits resulted from the failure of Valero to take gas. But, as the trial court found, the damages awarded in the first suit do not represent the permanent loss of any gas or oil, but only the income that the jury found would have been derived from the proceeds of the timely sale of the curtailed oil and gas during the eighteen months in question, and further, that it is not possible to determine if the jury in the first case awarded any damages for curtailment of only gas in 1986, or if so what amount. Without such proof, Valero cannot establish its claim of payment as a bar to the second suit.

■ In the alternative, Valero contends that Wagner & Brown are barred from recovery in the second suit by the doctrines of collateral estoppel and res judicata. Neither doctrine has been briefed and such issues have been waived. *Lewis v. Deaf Smith Electric Cooperative, Inc.,* 768 S.W.2d 511 (Tex.App.—Amarillo 1989, no writ). We do note that the doctrine only applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Tarter v. Metropolitan Savings & Loan Association,* 744 S.W.2d 926 (Tex.1988); *Bonniwell v. Beech Aircraft*

*Corporation,* 663 S.W.2d 816 (Tex.1984). When this case was tried in September 1986, the claim for take-or-pay damages for that year had not ripened because it was only at the end of the calendar year that a party could determine if the requirements for the purchase of gas had been met, and if not then calculate the damages. Therefore, we conclude that the doctrine of collateral estoppel does not apply.

■ Likewise, we also hold that the second suit is not barred by the doctrine of res judicata. Although the case had somewhat less money involved than the one at bar in *McCaskill v. Clay,* 284 S.W. 643 (Tex.Civ. App.—Amarillo 1926, no writ), the court rejected a plea of res judicata in a second suit involving fraud and deceit in the sale of a sewing machine, where a prior suit was based upon a note arising out of the sale of the sewing machine. The issues were not the same in the two suits. Because this doctrine prevents reassertion of the same cause of action, the critical question is how to determine whether the subsequent suit is on the same or a different cause of action. Several theories have been suggested as to how that determination should be made. *Bell v. State,* 727 S.W.2d 806 (Tex.App.—Austin 1987, writ ref'd n.r.e.). In *Griffin v. Holiday Inns of America,* 496 S.W.2d 535 (Tex.1973), the Court said: "As a general rule a judgment on the merits in a suit on one cause of action is not conclusive of a subsequent suit on a different cause of action except as to issues of fact actually litigated and determined in the first suit." As noted earlier, the 1986 breach of the take-or-pay clause did not materialize until the end of the calendar year. Thus, a trial in 1986 could not have been based upon a cause of action which did not come into existence until January 1, 1987. We have considered all of the contentions made under the first point of error and they are all overruled.

■ In the next two points of error, the Appellant contends the trial court erred in making certain findings of facts and certain conclusions of law and in failing to make certain findings requested by the Ap-

pellant which would have supported its theory that it owed nothing in this case. The court made twenty separate findings of fact which covered the basic issues upon which the case was tried. It found Valero did not take, or did not pay for if not taken, the contractually required quantity of natural gas for the 1986 calendar year. In applying the contractual formal under the take-or-pay clause, the court found damages of $13,875,401.00. It also found a contractual obligation for prejudgment interest which resulted in a recovery of $2,896,727.55. The court found the sum for attorney's fees as stipulated by the parties. Those findings, which are not attacked, support the judgment entered, unless the evidence presented by the Appellant establishes a total defense, or some credit to the amount claimed, which the trial court did not recognize. The Appellant contends that its evidence does establish both a total defense and in the alternative some credit, on the amount the trial court found to be due and owing.

■ Where the evidence is conflicting, the trial court, as finder of fact, must alone pass upon the credibility of the witnesses and the weight to be given their testimony. *Moser v. McLemore*, 266 S.W.2d 253 (Tex. Civ.App.—Amarillo 1953, no writ). As the trier of the facts, the court may believe one witness and disbelieve others, may disbelieve a witness though he is neither impeached nor contradicted, and may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. *Blackmon v. Piggly Wiggly Corporation*, 485 S.W.2d 381 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.); Ray, Texas Law of Evidence, sec. 3 (1980). Findings of fact have the same force and dignity as a jury's verdict on special issues. *McGalliard v. Kuhlmann*, 722 S.W.2d 694 (Tex.1986). But such findings are not conclusive on appeal where a statement of facts is part of the appellate record. *Zac Smith & Company, Inc. v. Otis Elevator Company*, 734 S.W.2d 662 (Tex.1987). In this case, the court made extensive findings as to the basis for holding that Valero was not entitled to a credit in this case for the amount paid to satisfy

the first judgment. Those findings have support in the evidence. Specifically, Mr. Allen Anderson, a witness for Valero, acknowledged that no one knows how much of the jury award in the first case was for oil or how much was for gas in 1985, all unrelated to this claim concerning only gas in 1986. In addition, there was evidence to support the trial court's finding which disallowed any credit for "downtime" on some of the wells at various times during the calendar year. Mr. Gerald Dickinson, Jr. acknowledged that a well down one day and back on production the next day could have the potential to make up for the down period. Mr. Edwin Lilley testified down time would not affect the total capacity of the wells to deliver on a twenty-four hour basis. He testified:

> [W]e do shut-in casing on several wells periodically, some most everyday. We have found that by closing in casing for an hour or two, sometimes 3, it allows the foam that is in the casing to fall back and compression of the gas pushes the liquid back to the tubing and results in the pump not gas locking, and therefore, by this process the well actually produces more hydrocarbon, oil and gas, for a 24 hour period, than if we did not close the casing.

We find that the evidence supports the findings and conclusions of the trial court and there was no error in rejecting the requested findings and conclusions of Valero. Some of those requested findings the trial court could have made, such as ones about the jury verdict and the payment of the judgment in the first case, but such findings would not have changed the judgment in this case. It could not have found that the wrong alleged in the first case was the same as the wrong alleged in this case. Finding no error, Points of Error Nos. Two and Three are overruled.

The judgment of the trial court is affirmed.