# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00165-CV

**John Murray, Appellant**

**v.**

**G. Richard Grayum, Appellee**

### FROM COUNTY COURT OF LLANO COUNTY
### NO. 01895, HONORABLE WAYNE BRASCOM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

G. Richard Grayum sued John Murray for damages arising from Murray's attempt to repair Grayum's boat engine. After a bench trial, the court found that Murray breached an implied warranty and knowingly and intentionally engaged in false, misleading, and deceptive acts. The court awarded Grayum $5,952.83 in economic damages, treble damages, $10,400 in accrued attorney's fees, as well as court costs, pre- and post-judgment interest, and $12,000 attorney's fees in the event of an unsuccessful appeal. We will reverse the award of attorney's fees to Grayum and remand for further proceedings on that issue. We otherwise affirm the judgment.

## BACKGROUND

Grayum hired Murray to rebuild his boat engine. The parties dispute whether their oral agreement was for Grayum to pay $1,000 total or $1,000 for labor plus the cost of parts. Grayum testified that Murray estimated the repairs would take two to three weeks to complete. Three months

after delivering the boat to Murray for repairs, Grayum sent a letter demanding return of the boat. More than two months later, Murray agreed to release the boat upon payment of $2,675.75—representing $1,000 for labor plus the cost of parts. Murray had not tested the engine to see if it worked. Grayum paid the amount requested, then took the boat to Highland Lakes Watercraft ("HLW") to have the repairs checked and the boat water tested. HLW found problems remaining and performed additional work on the engine, including replacing a hose, fastening some loose clamps, and replacing a piston that lost compression after the engine ran for a few minutes.

Grayum sued Murray under the deceptive trade practices act. *See* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2011) ("DTPA"). Murray represented himself at trial, while Grayum was represented by his wife, Marian Bloss. In its final judgment, the court made awards consistent with amounts calculated in Grayum's exhibits on damages and attorney's fees.

## ANALYSIS

Murray raises six issues on appeal. He complains that the trial court erred by rendering judgment based on documents never offered or entered into evidence, that there was no evidence or insufficient evidence of a violation of the deceptive trade practices act, that the economic damages were a double recovery for Grayum, that the trial court erred in ordering treble damages, that there was no evidence to support the reasonableness or necessity of the attorney's fees award, and that a conference about the judgment between the trial court and Grayum's attorney after trial without him deprived him of his fundamental due process right to a fair trial.

In order to preserve errors for appellate review, the complaining party generally must show that it complained to the trial court by a timely and proper request, objection, or motion

stating the basis of the complaint, as well as a ruling or refusal to rule by the trial court. Tex. R. App. P. 33.1(a). The complaining party must show that the error probably caused the rendition of an improper judgment or probably prevented the party from properly presenting the case to the court of appeals. *Id*. R. 44.1(a). Generally speaking, an appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. *Britton v. Texas Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Harris v. General Motors Corp.*, 924 S.W.2d 187, 188 (Tex. App.—San Antonio 1996, writ denied). If an appellant does not challenge each independent basis successfully, then we must affirm the ruling or judgment on the remaining independent basis. *Britton*, 95 S.W.3d at 681; *Harris*, 924 S.W.2d at 188.

**Damages based on documents allegedly not in evidence**

Murray contends that the court erred by rendering judgment based on documents never offered or admitted into evidence. Our review of the record reveals that, if the exhibits were not formally admitted when they were offered, they were collectively admitted at the end of trial through the following exchange between plaintiff's counsel and the trial court:

> MS. BLOSS: Did Your Honor admit all the exhibits that we've proffered to The Court?
>
> JUDGE BRASCOM: Yes.
>
> MS. BLOSS: One through—
>
> JUDGE BRASCOM: 37 I think it was.

3

Murray did not object to the exhibits when they were introduced in the flow of the trial, and he did not object to this collective admission of evidence at the end of trial. On appeal, Murray complains that the trial court admitted the evidence "without giving Appellant the opportunity to object." Murray does not cite to the record to show when or how he was denied an opportunity to object before or complain after their admission. Because Murray did not present this complaint to the trial court, he failed to preserve this alleged error for review on appeal. *See* Tex. R. App. P. 33.1(a).

The judgment amounts awarded are based on the amounts shown in the exhibits admitted. The amounts of damages and trial attorney's fees awarded are identical to or less than amounts calculated on admitted exhibits ($5,952.83 in economic damages as requested in exhibit 32; $10,400 out of $10,440 in trial attorney's fees as requested in exhibit 30).[1] As such, Murray's complaint that the judgment was based on documents not in evidence fails.

**Sufficiency of evidence to support finding of DTPA violations**

Murray contends that no evidence or insufficient evidence supports the trial court's finding that he violated the DTPA. In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). Where a reporter's record is filed, as it was in this case, the implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *Id*. We review a trial court's factual determinations after a bench trial using the same standards applied to jury verdicts. *Ortiz v. Jones*,

---

[1] Additional attorney's fees were calculated for trial work in exhibit 38. The trial court did not award Grayum the additional $3,806 in attorney's fees calculated in exhibit 38.

4

917 S.W.2d 770, 772 (Tex. 1996). We will sustain a challenge to legal sufficiency if there is a complete absence of evidence of an essential fact, the trial court was barred by rules of law or evidence from giving weight to the only evidence proving an essential fact, no more than a scintilla of evidence was offered to prove an essential fact, or the evidence conclusively establishes the opposite of the essential fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We view the evidence in the light most favorable to the trial court's determination, crediting favorable evidence if a reasonable fact finder could have done so and disregarding contrary evidence unless a reasonable fact finder could not. *Id.* at 807. When considering a factual-sufficiency challenge, we review all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under both standards of review, we are mindful that the trial court as finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we will not disturb the court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 914 (Tex. App.—Austin 1998, pet. denied); *see also City of Keller*, 168 S.W.3d at 819.

To establish a breach of the implied warranty of good workmanship in the repair and modification of existing tangible goods, the plaintiff must establish that the repairs were not performed in a good and workmanlike manner, not merely that the result of the repairs was unsatisfying. *See Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354-55 (Tex. 1987); *Milt Ferguson Motor Co. v. Zeretzke*, 827 S.W.2d 349, 356 (Tex. App.—San Antonio 1991, no writ).

5

The trial court stated in its judgment in relevant part as follows:

> The court further FINDS that the Defendant knowingly and intentionally engaged in false, misleading and deceptive acts that Plaintiff relied upon to Plaintiff's detriment; that Defendant breached an implied warranty; that Defendant flagrantly engaged in numerous other unconscionable actions resulting in extensive damage to the Plaintiff, extending no efforts to mitigate those damages. The economic damages claimed by Plaintiff are proved by written instruments offered as exhibits, which permits a calculation of those damages.

Murray contends that only inadmissible hearsay evidence was offered to substantiate claims of a breach of the implied warranty of good and workmanlike repairs and that there was no or insufficient evidence to support the finding of an implied warranty.[2]

Murray's complaint regarding the admissibility of the evidence fails. He does not point to any evidentiary objection of his on this basis that was improperly overruled. The admission of such evidence in the absence of an objection is not reversible error. *See Andrews v. ABJ Adjusters, Inc.*, 800 S.W.2d 567, 568-69 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (party cannot successfully raise objection to evidence for first time on appeal).

---

[2] Murray also complains that Grayum's failure to give Murray the chance to correct any repair mistakes bars recovery, citing *Southwest Lincoln-Mercury, Inc. v. Ross*, 580 S.W.2d 2, 5 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). That case, however, arose out of the sale of a vehicle and the opinion relied on a statute that required that a buyer notify the seller of the defect and give the seller a chance to cure the defect before suing under the DTPA for breach of warranty. *Id.*; *see also* Tex. Bus. & Com. Code Ann. § 2.607(c)(1) (West 2009). That chapter of the Uniform Commercial Code concerns sales of goods, not provision of services. *See* Tex. Bus. Com. Code Ann. § 2.103(a)(4) (West 2009) ("'Seller' means a person who sells or contracts to sell goods."). Accordingly, section 2.607 does not control this case that concerns a dispute over the repair of a boat engine. *See also Garcia v. Rutledge*, 649 S.W.2d 307, 310 (Tex. App.—Amarillo 1982, no writ) (UCC chapter 2 governing sales does not apply to truck repair contract because the predominant factor was the furnishing of services and performance of work, not the sale of goods). This case does not arise out of the sale of the boat, only its attempted repair.

Legally and factually sufficient admitted evidence supports the judgment. The bill from HLW states that, when HLW received the boat, the reverse and steering cables were disconnected, that several wires were disconnected, that the motor mount bolt was loose, that there was starter noise or engine noise, and that the motor would not start. Grayum introduced pictures that his expert testified illustrated that the fuel pump hose was cracked and sucking air and that the main intake hose was crimped, preventing it from taking in water to cool the engine. Grayum's expert also testified that another picture showed a thermostat hose to a cylinder head incorrectly clamped, which caused a water leak. Other evidence shows that, when HLW ran the engine, it started, ran for a few seconds or minutes, then died. The compression on a cylinder dropped during that test. HLW charged Grayum to replace the piston and the ring. Grayum's expert, a mechanic who did not work for HLW or work on Grayum's boat, testified that starting the engine after rebuilding it was "sort of a prerequisite in that I like to know what I've done. What I've ended up with." He also testified that a mechanic should reconnect all cables, wires, and engine mount bolts at the end of a job. He testified that the cracked fuel pump hose would have reduced the flow of fuel, and the crimped hose and the loose thermostat hose could have resulted in the motor overheating and burning up. The mechanic testified that an engine that has been properly rebuilt should not have a bad piston, and that a proper rebuild should include an engine test to reveal such problems. The mechanic testified that the condition that the boat was in when Murray released it—including loose cables, crimped or cracked hoses, and a loose engine bolt—could have led to catastrophic results if Grayum had gotten the boat out onto the lake.

7

The HLW bills quantified Grayum's damages. Although Murray's cross-examination of the mechanic expert witness revealed some potential alternative explanations for the engine's problems after Murray released it, that testimony raised at most an issue of fact. The record contains evidence from which the trier of fact could reasonably conclude that Murray did not perform his work in a good and workmanlike manner. As such, legally and factually sufficient evidence supports the trial court's conclusion that Murray breached the implied warranty of good and workmanlike repair work.

**Double recovery**

Murray contends that the economic damages award includes items that are not allowable and, by requiring Murray to both refund Grayum's payment to him and reimburse Grayum for amounts owed to HLW for further repairs, gives a double recovery to Grayum.

Prevailing plaintiffs can recover economic damages arising from a violation of the DTPA. Tex. Civ. Prac. & Rem. Code Ann. § 17.50(b)(1). The DTPA defines economic damages as "compensatory damages for pecuniary loss, including costs of repair and replacement. The term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society." *Id*. § 17.45(11).

Murray has not preserved and presented error meriting reversal on this issue. To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method. Tex. R. App. P. 33.1; *Dal-Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 144

8

(Tex. App.—Dallas 2006, no pet.). Murray did not present the damages issues he raises on appeal to the trial court during or after trial. There is no showing that the judgment amounts awarded are fundamentally erroneous or exceed the limitations of the statute. The errors in the damage award asserted on appeal were not preserved for our review. The only error regarding damages preserved for appeal is Murray's assertion in his motion for new trial that the trial court "abused its discretion" by "[a]llowing economic damages totaling $5,952.83 with no evidence presented showing such damages." We conclude that Plaintiff's exhibit 32—an itemized list of various expenses Grayum incurred in getting the boat repaired after removing it from Murray—is some evidence in the record supporting the damage award.

**Treble damages**

Murray also contends that the trial court erred by awarding treble damages. Treble damages are available under the DTPA as follows:

> If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages;

Tex. Civ. Prac. & Rem. Code Ann. § 17.50(b)(1). Murray's only challenge at trial to the treble damage award was in his motion for new trial, in which he stated that there was "no right to award treble damages in this cause." On appeal, Murray contends that his work did not cause Grayum's damages and, even if it did, he cannot be held to have knowingly harmed Grayum because

9

he was never given the chance to cure any problems with his repairs. We have already concluded that the record contains legally and factually sufficient evidence to support the finding that Murray violated the DTPA.

Murray does not challenge on appeal the court's finding that Murray intentionally committed his conduct that violated the DTPA. The treble damage award can stand on this unchallenged finding alone. *See id.* We therefore need not review whether the record supports the finding that Murray committed his conduct knowingly. *See Britton*, 95 S.W.3d at 681; *Harris*, 924 S.W.2d at 188.

**Trial attorney's fees**

Murray contends that the trial court erred by rendering judgment for $10,400 in attorney's fees accrued at trial with no evidence that such charges were reasonable and necessary.[3] The court in its judgment states that it "takes judicial notice of the usual and customary attorney's fees," but did not find that the fees awarded were reasonable and necessary. We review the trial court's judgment awarding attorney's fees pursuant to the DTPA under an abuse of discretion standard. *Bohls v. Oakes*, 75 S.W.3d 473, 480 (Tex. App.—San Antonio 2002, pet. denied).

Murray asserts that Grayum did not show that he had an agreement to pay his attorney, who is also his wife, any fees. Murray did not raise these issues at trial and does not cite to any authority for the proposition that such a showing is required or that Bloss's marital status is relevant. These issues are waived. *See* Tex. R. App. P. 33.1, 38.1(i).

---

[3] Appellant does not challenge the attorney's fees awarded in case of an unsuccessful appeal.

10

The DTPA requires that consumers who prevail on DTPA claims be awarded reasonable and necessary attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 17.50(d). The reasonableness and necessity of attorney's fees are fact questions and must be shown by evidence. *See Hennessey v. Skinner*, 698 S.W.2d 382, 386 (Tex. App.—Houston [14th Dist.] 1985, no writ); *see also First Nat'l Bank v. Shockley*, 663 S.W.2d 685, 690-91 (Tex. App.—Corpus Christi 1983, no writ).

We do not find and are not cited to any evidence that the attorney's fees requested were reasonable and necessary. Grayum was not entitled to the rebuttable presumption under civil practice and remedies code chapter 38 that usual and customary fees are reasonable because his particular DTPA claims did not invoke the statutory scheme under which that presumption arises.[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.003 (West 2008)); *see also Smith v. Smith*, 757 S.W.2d 422, 425-26 (Tex. App.—Dallas 1988, writ denied).

Although ordinarily the failure to produce any evidence of an element of proof requires that we reverse and render judgment that a plaintiff take nothing, attorney's fees for a

---

[4] Grayum did not plead for attorney's fees under chapter 38 of the civil practice and remedies code. Under that chapter, attorney's fees are available for, among other things, claims on oral contracts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2008). Attorney's fees are available under that chapter to persons who prevail on claims for breach of express warranties because such claims are considered to be based on a contract. *Medical City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 62 (Tex. 2008). Implied warranty claims, however, are deemed to be grounded more in tort than in contract. *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 704 (Tex. 2008). Implied warranty claims that seek more than pure economic damages sound in tort. *Id.* at 705. Courts have held that attorney's fees are not available under chapter 38 for implied warranty claims. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys.*, 245 S.W.3d 488, 510 n.31 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Because Grayum sought damages for mental anguish, his implied warranty claims sounded in tort. Accordingly, attorney's fees are not available under chapter 38 for at least part of his claim for breach of implied warranty.

prevailing consumer under the DTPA have been treated differently. *Leggett v. Brinson*, 817 S.W.2d 154, 157 (Tex. App.—El Paso 1991, no writ). In such a case, the proper remedy is to remand to the trial court for presentation of evidence and a determination of whether the requested fees are reasonable and necessary. *Id.*; *see also id.* at 159 (Koehler, J., concurring); *Smith*, 757 S.W.2d at 422. *But see American Commercial Colls., Inc. v. Davis*, 821 S.W.2d 450, 455 (Tex. App.—Eastland 1991, writ denied) (when there is no evidence that requested attorney's fees are reasonable and necessary, remedy is rendition of judgment that consumer take nothing).

The only evidence in the record supporting the award of attorney's fees is the exhibit totaling the fees charged. There is no testimony or affidavit asserting that the fees listed were reasonable and necessary. Accordingly, we must reverse the award of $10,400 in attorney's fees awarded for trial and remand for a new trial on that issue.[5]

**Ex parte conference**

Murray's remaining complaint concerns an alleged ex parte judgment conference between the trial judge and Bloss, Grayum's counsel. After announcing the economic damage award at the end of the trial, the judge told Bloss that he wanted to talk to her the next day about her attorney's fees claim. When Murray asked if he "needed" to attend, the trial judge indicated that he did not. Bloss said that she could almost guarantee that the only subject of the conference would be

---

[5] The rule prohibiting remand for a separate trial on contested unliquidated damages does not prohibit remand for a trial on the reasonableness and necessity of attorney's fees when those issues are separable from the remaining issues in the trial. *Brown v. Traylor*, 210 S.W.3d 648, 659-60 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

12

the court's desire to reduce her attorney's fees, although other elements of the judgment such as treble damages and interest were not yet firmly set.

While we do not generally approve of a trial court conferring privately with one party to formulate a judgment, Murray's complaint about the alleged ex parte judgment conference does not present reversible error for several reasons. Murray did not object at trial to this procedure and there is no proof that the conference occurred, much less a record of it for us to review for bias or harm. The damage amounts ultimately awarded were drawn directly from Grayum's uncontroverted exhibits or computed pursuant to statute. Even if Murray could claim that the alleged conference harmed him through the amount of attorney's fees awarded for the trial, that issue is moot because we are reversing the amount of attorney's fees awarded for the trial.[6]

## CONCLUSION

We reverse the award of $10,400 in trial attorney's fees for the trial and remand for the trial court to determine what amount of attorney's fees award is necessary and reasonable. We affirm the judgment in all other respects.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed in part; Reversed and Remanded in part

Filed:   June 24, 2011

_____

[6] Murray has not challenged the award of appellate attorney's fees.

13